UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

F. ROZIER SHARP, Regional Director
for Region Seventeen of the National
Labor Relations Board, for and on
behalf of the NATIONAL LABOR
RELATIONS BOARD,

        Petitioner-Appellee,

v.

WEBCO INDUSTRIES, INC.,

        Respondent-Appellant.

No. 00-5005
(D.C. No. 99-CV-893-H)
(N. District of Oklahoma)

ORDER
Filed September 25, 2001

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**BELOT**, District Judge.[*]

    Appellee's motion to publish our order and judgment dated July 18, 2001,

without objection, is granted.  A copy of the published opinion is attached to this

order.

                        ENTERED FOR THE COURT
                        PATRICK FISHER, Clerk of Court

                    By:
                        Deputy Clerk

---

[*] Honorable Monti L. Belot, District Judge, United States District Court for
the District of Kansas, sitting by designation.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

F. ROZIER SHARP, Regional Director
for Region Seventeen of the National
Labor Relations Board, for and on
behalf of the NATIONAL LABOR
RELATIONS BOARD,

    Petitioner-Appellee,

v.

WEBCO INDUSTRIES, INC.,

    Respondent-Appellant.

No. 00-5005

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 99-CV-893-H)**

David E. Strecker (James E. Erwin with him on the briefs), of Strecker &
Associates, P.C., Tulsa, Oklahoma, for Respondent-Appellant.

Laura T. Vazquez, Attorney (Leonard R. Page, General Counsel; Mary Joyce
Carlson, Deputy General Counsel; Barry J. Kearney, Associate General Counsel;
Ellen A. Farrell, Assistant General Counsel; Judith I. Katz, Deputy Assistant
General Counsel, with her on the brief), of the National Labor Relations Board,
Washington, D.C., for Petitioner-Appellee.

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**BELOT**, District Judge.*

---

    * Honorable Monti L. Belot, District Judge, United States District Court for
                                                 (continued...)

**McWILLIAMS**, Senior Circuit Judge.

Webco Industries Inc. is a steel tubing manufacturer and distributor headquartered in Sand Springs, Oklahoma. On October 7, 1998, Webco laid off fifty three employees in an economically-motivated reduction in force. The following day the United Steelworkers of America ("Union") filed an unfair labor practice charge with the National Labor Relations Board ("Board") alleging that Webco discriminatorily selected Union supporters for layoff in violation of Section 8(a)(3) of the National Labor Relations Act ("Act"). In the days immediately following the layoffs, some, but not all, of the laid off employees, signed severance agreements with Webco. Charles H. Casey and Eric R. Martin, who had been laid off signed a severance agreement. By those agreements the employees relinquished any claims against Webco, including "any rights or claims . . . [they] may have . . . under the National Labor Relations Act, which prohibits unfair labor practices which interfere with employees' rights under said Act," in exchange for severance benefits granted them by Webco. (The severance agreements also provided that the employee would not seek re-employment with

*(...continued)
the District of Kansas, sitting by designation.

-2-

Webco).  Those benefits included "career transition" assistance and severance pay calculated according to the employees' length of service with the company. Casey's severance pay was $4085.64 and Martin's was $569.40.

On March 8, 1999, after investigating the Union's Section 8(a)(3) charge, the Regional Director issued a complaint which, as eventually amended, alleged that Webco had discriminatorily selected seventeen employees for layoff.  Casey and Martin, and several others who had signed severance agreements, were among the discriminatees named in the complaint.  In its answer to the complaint Webco alleged that the severance agreements barred the Section 8(a)(3) claims of all discriminatees who had signed the severance agreements.

Between May 4 and May 19 1999, Webco filed petitions in the District Court of Creek County, Oklahoma against the employees named in the Section 8(a)(3) complaint who had signed severance agreements, including Casey and Martin.  Webco's petitions generally alleged that the employees had waived all claims against it by their signing of the severance agreements and that their participation as discriminatees in the Section 8(a)(3) unfair labor practice proceeding constituted a breach of contract.  Shortly after Webco filed its breach of contract actions in state court, the Union filed a new unfair labor practice charge alleging that Webco, in filing its breach of contract actions, violated the Act because such were filed in retaliation for the employees' participation in the

layoff case.

While the Regional Director investigated this new charge, the Section 8(a)(3) case was proceeding. The Administrative hearing in that case commenced on May 11, 1999. In that hearing, Webco continued to defend on the basis that the severance agreements barred some of the discriminatees' 8(a)(3) claims, including Casey's and Martin's claims. Eventually Webco reached settlements with many of the discriminatees who had signed severance agreements. By these settlements the employees withdrew from the Section 8(a)(3) proceeding and in return Webco dismissed its breach of contract action against them. Of the discriminatees who signed the severance agreements, only Casey and Martin declined to settle. In other words, they remained in the Section 8(a)(3) proceedings and Webco persisted in its breach of contract case against the two.

On August 25, 1999, with the Section 8(a)(3) case pending, the Regional Director completed his investigation of the charge based on Webco's prosecution of breach of contract actions in state court and he issued another unfair labor practice complaint against Webco. That complaint alleged that Webco's breach of contract actions against Casey and Martin violated Section 8(a)(1) and (4) of the Act because they challenged their participation in the Section 8(a)(3) proceeding and that such is preempted by the Board's jurisdiction over the issues

-4-

involving layoffs under consideration in the 8(a)(3) case.[1]

About one month after the 8(a)(1) and (4) complaint issued, the Administrative Law Judge, on September 17, 1999, issued his decision in the 8(a)(3) case. The judge found that Webco had discriminatorily selected Union supporters for layoffs, including Casey and Martin. In so doing, the judge rejected Webco's defense that the severance agreements barred Casey and Martin from participating in any manner in the 8(a)(3) proceeding and held that the severance agreements did not effectively waive Casey's and Martin's right to resort to the Board regarding the layoffs. Webco filed exceptions to the judge's decision and the matter is now pending before the Board.

In September, 1999, shortly after the Administrative Law Judge's decision, which, as stated, was issued on September 17, 1999, Webco amended its breach of contract action in the state court and added two new causes of action, one for unjust enrichment and one for money had and received. By these new claims, Webco seeks return of the severance benefits given Casey and Martin. The newly added claims, based on unjust enrichment and on money had and received,

---

[1] Jumping ahead, an Administrative Law Judge held a hearing on October 22, 1999 in Tulsa, Oklahoma on the complaint that Webco had violated Sections 8(a)(1) and (4) of the Act by filing lawsuits against Casey and Martin in state court because they had participated in the Section 8(a)(3) proceedings. On March 20, 2000, the Judge issued her decision on that matter and held that Webco in prosecuting its state actions against Casey and Martin had violated Sections 8(a)(1) and (4) and entered a remedial order against Webco.

incorporated therein by reference the breach of contract allegations contained in counts one and two of the amended petition.

On October 20, 1999, F. Rozier Sharp, Regional Director, filed, under Section 10(j) of the Act, a petition for an injunction against Webco in the United States District Court for the Northern District of Oklahoma alleging that Webco had engaged in unfair labor practices within the meaning of Section 8(a)(1) and (4) of the Act. Specifically, Sharp alleges that Webco, in instituting lawsuits against Casey and Martin in the state court of Oklahoma on May 5, 1999 and May 19, 1999, engaged in unfair labor practice under Section 8(a)(1) and (4) of the Act because its lawsuits against Casey and Martin were "preempted under *Loehman's Plaza*, 305 NLRB 663(1991), because the Board has exclusive jurisdiction over the issues raised by the lawsuits." In this connection, Sharp went on to allege that temporary injunctive relief was "'just and proper' to preserve the Board's exclusive jurisdiction and to prevent the possibility of inconsistent judgments between the Board and the state forums" and that the Board has "exclusive jurisdiction to determine if Respondent's [Webco's] waiver defense is valid under federal labor law."

The following day, on October 21, 1999, Webco filed an answer and counter-claim to Sharp's petition. In its counterclaim, Webco alleged that both Casey and Martin had "committed substantial material breaches of the terms of

-6-

their Agreements with Webco."

On December 8, 1999, the day before the district court held a hearing on Sharp's petition for a temporary injunction, Webco moved in state court to dismiss its breach of contract claims against Casey and Martin, but continue its restitution claims against them. On December 14, 1999, the district court, after considering the parties' briefs, the Board's administrative record, various exhibits and testimony from several witnesses, granted the Regional Director's request for a temporary injunction and denied Webco's counterclaim. Webco appeals the district court's order.

Sharp's petition for injunctive relief was filed pursuant to 29 U.S.C. §160(j), referred to by the parties as Section 10(j). That sections provides as follows:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States District Court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper. (emphasis added).

As indicated, Webco filed an answer to Sharp's petition for temporary

injunctive relief, wherein it admitted many of the allegations in the petition but also denied many others. Webco then asked the court to dismiss Sharp's petition in its entirety. Webco at the same time filed a counterclaim asking the district court to enter an order directing the Board to show cause why it should not stay its own proceedings in the unfair labor practice proceeding involving the claim that Webco, in filing state actions against Casey and Martin, was guilty of unfair labor practices, until Webco's state court actions were finally resolved. As a first alternative Webco asked that the district court order that the Board's complaint regarding that matter as well as the notice of hearing issued by the Board in connection therewith be vacated. As a further alternative, Webco asked the district court to order the Board to "leave open and not conclude" the earlier unfair labor practices proceeding involving the charge that Webco had discriminatorily laid off Casey and Martin.

In its order granting Sharp's petition for injunctive relief, the district court held that in prosecuting contract claims against Casey and Martin in a state court in Oklahoma because their names were included in a charge filed by the Union with the Board there was "reasonable cause to believe that Webco had violated the NLRA," and that injunctive relief was, under the circumstances, "just and proper," citing *Angle v. Sacks,* 382 F.2d 655 (10th Cir. 1967). In connection therewith, the district court explained its reasoning in so holding in considerable

detail. The district court distinguished *Bill Johnson's Restaurant Inc. v. NLRB*, 461 U.S. 731, 738 n. 5 (1983), relied on by Webco, from the instant case. The district court recognized what it described as "well settled" law that the Board has the authority to enjoin state actions where its federal power preempts, or arguably preempts, the field. *See NLRB v. Nash-Finch Co.*, 404 U.S. 138 (1971). The district court also noted that the question whether the severance agreements signed by Casey and Martin constituted a valid waiver of their statutory rights was still pending before the Board. In so noting, the district court was aware that by that time Webco had dismissed its breach of contract claims against Casey and Martin, and then rejected counsel's suggestion that "its remaining state court causes of action [i.e. for unjust enrichment and money had a received] escape preemption."

We are in general accord with the district court's analysis of this matter. As indicated, this proceeding was started by Sharp's filing with the United States District Court for the Northern District of Oklahoma a petition for a temporary injunction against Webco enjoining it from pursuing, for the time being, various claims against Casey and Martin wherein Webco sought return of moneys given by it to Casey and Martin in return for their promise "not to sue" Webco for their layoffs. We emphasize that we are here concerned with only a temporary injunction, not a permanent injunction. Under *Angle v. Sacks,* 382 F.2d 655

(10th Cir. 1967), the Board had to show "reasonable cause" to believe that Webco had violated the Act and that temporary injunctive relief under the circumstances was "just and proper." We agree that the Board met its burden of proof in these regards. In issuing the temporary injunction, the district court did not abuse its discretion. *Id.* at 658.

Webco's basic position in this court is that *Bill Johnson's* precludes the issuance of a temporary injunction in the present case. The district court rejected that argument as do we. In *Bill Johnson's* at 737 n. 5, the Supreme Court recognized that it was not "dealing with a suit that is claimed to be beyond the jurisdiction of the state courts because of federal-law pre-emption . . . ."[2] Here we are dealing with such a claim. Certainly it is reasonably arguable that the state court's jurisdiction over Webco's state claims against Casey and Martin have been preempted by the Act. In that regard, the district court observed that Webco had at one time agreed to stay its state breach of contract claim against Casey and Martin pending resolution of the Board's proceedings and that it was only after they abandoned those claims and asserted money had and received and unjust enrichment claims that it decided that it should be allowed to pursue those claims without in any way deferring to the Board. The severance agreements

---

[2] We note that *Bill Johnson's* was concerned with a Board's cease-and-desist order, whereas here we are concerned with a temporary injunction issued by a district court in a Section 10(j) proceeding.

-10-

signed by Casey and Martin are intertwined with and have a bearing on the ultimate question of whether Webco is entitled to a return of the $4085.64 it paid Casey and the $569.40 it paid Martin in return for their promise not to sue Webco or seek reinstatement.

Having concluded that there was "reasonable cause" to believe that Webco had committed an unfair labor practice, that it was both "just and proper" for the district court to issue a temporary injunction and that its issuance thereof does not offend *Bill Johnson's*, we need not consider the alternative grounds relied on by the district court for its issuance of the temporary injunction.

Judgment affirmed.